IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KHEM UN,                              )
                                      )
          *Petitioner*,               )
                                      )
v.                                    )        Criminal Action No.: 1:10-cr-446
                                      )        Civil Action No.: 1:14-cv-462
UNITED STATES OF AMERICA,             )
                                      )
          *Respondent*.               )

<u>MEMORANDUM OPINION</u>

This matter comes before the Court on pro se Petitioner Khem Un's Motion to Vacate under 28 U.S.C. § 2255. Dkt. No. 337. The government has filed its response in opposition, to which Petitioner replied. Dkt. Nos. 384, 395. Petitioner also filed two supplemental pleadings. Dkt. Nos. 357, 444. For the reasons stated below, the motion will be denied.

I.      **Background**

From June to October 2010, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") conducted an undercover investigation involving Petitioner and other co-conspirators. In June 2010, an ATF confidential informant introduced three undercover law enforcement officers ("UCs") to Defendant Phun, who was based in Philadelphia. During the meeting, they discussed Phun's large-scale marijuana trafficking as well as a potential armed robbery of a narcotics "stash house" in Virginia. Following this initial meeting, Phun met with the UCs from June 2010 to October 2010, exchanging contraband cigarettes for marijuana.

On October 6, 2010, Phun met with the UCs in Fairfax County, Virginia to discuss the logistics of the stash house robbery. The UCs provided Phun with pictures of motels, explaining that these were the locations where one UC had previously picked up kilograms of cocaine. The

1

UC explained that when he arrived to collect the drugs, he observed ten kilograms of cocaine and was met by three or four armed individuals. Phun then explained that he had access to ballistic vests as well as FBI raid jackets and hats, and that he and his associates could pose as law enforcement during the robbery. The UCs informed Phun that the cocaine would arrive at the stash house in three weeks.

On October 21, 2010, the UCs met with Defendants Phun, Johnson, and a third unnamed individual at a Famous Dave's restaurant in Philadelphia to discuss the upcoming robbery. The UCs explained the seriousness of the robbery and questioned the defendants' desire to conduct it. Defendants agreed that they wished to go through with it. Johnson confirmed that the crew would bring their own firearms for the task. At the end of the meeting, the UCs informed the defendants that the cocaine would arrive in Virginia the following Thursday. Defendants agreed that they would travel to Virginia on Wednesday and conduct the robbery on Thursday.

On October 28, 2010, the remaining defendants, including Petitioner, arrived in Virginia to conduct the robbery. Petitioner contacted the UCs and arranged to meet at a gas station in Fairfax County, Virginia. Around 11 a.m., the UC arrived at the gas station where the defendants were parked in a white Suburban. Petitioner and Johnson approached the UC where they shook hands. The UC then advised the defendants to follow him to a storage facility where the rental car to be used for the robbery was located.

After following the UCs to a storage facility, Defendants Johnson, Min, and Petitioner indicated that they were ready to do the job, and stated that the firearms were in the white Suburban. After more discussion, the UC suggested that they transfer the firearms from the Suburban to the rental. Petitioner then walked to the Suburban and engaged in conversation with Defendants McCalister and Stevens. Ten minutes later, McCalister and Stevens exited the car

2

and walked towards the storage unit, concealing firearms under their clothes and in their pockets.
They then placed the guns in a compartment inside the rental car. Stevens and McCalister then
joined the rest of the group in the storage unit. The UC asked the defendants whether they were
ready, and they confirmed they were. At this time, the UC pretended to receive a call from a
drug organization member and advised the group that it was time to start the robbery. Law
enforcement then moved in and arrested Petitioner and the other defendants.

On December 28, 2010, a federal Grand Jury charged Petitioner in a three-count
indictment with conspiring to affect commerce by robbery, possession of a firearm in furtherance
of a crime of violence, and conspiring to possess with intent to distribute five kilograms or more
of cocaine. Dkt. No. 22. A Grand Jury later charged him in a three-count superseding
indictment for the same offenses. Dkt. No. 35.

During trial, the government filed an anticipatory motion to preclude all Defendants
except Phun from using the affirmative defense of entrapment. Dkt. No. 60. The Court denied
this motion without prejudice. Dkt. No. 107. All Defendants subsequently filed notices of an
entrapment defense, to which the government responded with a notice of intent to introduce
evidence of uncharged conduct if Defendants used the defense. Dkt. No. 110. In its March 10,
2011 Order, the Court stated that it would allow Defendants to raise the entrapment defense but
would permit the government to introduce admissible evidence of prior criminal history if they
decided to do so. Dkt. No. 143. As a result, Defendants did not raise the defense.

The jury trial commenced on March 14, 2011. On March 18, 2011, the jury convicted
Petitioner of all three counts of the superseding indictment. Dkt. No. 162. On July 22, 2011, the
Petitioner appeared before the Court and was sentenced to 168 and 240 months of incarceration
as to Counts 1 and 3 respectively, to run concurrently, and a consecutive sentence of 60 months

as to Count 2.  Dkt. No. 272.  On July 26, 2011, Petitioner filed his notice of appeal to the Fourth

Circuit, which ultimately affirmed his conviction.  Dkt. Nos. 270, 319.

## II.     Discussion

Petitioner seeks to vacate his sentence pursuant to 28 U.S.C. § 2255.  A petitioner is

entitled to relief under 28 U.S.C. § 2255 only in the extraordinary event that he demonstrates

either: (1) a lack of jurisdiction by the convicting court; (2) constitutional error; or (3) legal error

so grave as to be "a fundamental defect which inherently results in a complete miscarriage of

justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citation and internal quotation

marks omitted).  It is well settled that bare, conclusory allegations are insufficient to entitle a

petitioner to relief under § 2255.  *See, e.g.*, *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir.

2013), *cert. denied*, 135 S. Ct. 47 (2014).

Petitioner asserts that he was denied his Sixth Amendment right to effective assistance of

counsel based upon eleven grounds, alleging his counsel's failure to: (1) contest or challenge the

composition of the jury based on exclusions of African-Americans and Asian-Americans; (2)

contest the drafting of the indictment and challenge Count Two as duplicitous; (3) contest the

existence of the alleged conspiracy; (4) contest the sufficiency of the nexus to interstate

commerce; (5) contest jury instructions related to the Hobbs Act; (6) object that a conspiracy

cannot be formed between a criminally motivated person and a government agent; (7) challenge

the existence of a single conspiracy as opposed to multiple conspiracies; (8) raise an entrapment

defense and request an entrapment jury instruction; (9) contest Petitioner's § 851 enhancement;

(10) seek dismissal of the indictment pursuant to the "outrageous government conduct" doctrine;

and (11) object to the jury instructions on aiding and abetting, which led to the constructive

amendment of the indictment as to Count Two.

4

In the landmark *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-part standard for evaluating claims of ineffective assistance of counsel. The first prong requires a showing that counsel failed to provide reasonably effective assistance—in other words, that counsel's conduct fell below an objective standard of reasonableness in light of the circumstances at the time. *Id.* at 687–88. This prong presents a high burden because the Court must "presume[] that the defendant's counsel rendered objectively effective performance." *See United States v. Dyess*, 478 F.3d 224, 237 (4th Cir. 2007). The second prong requires the defendant to prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. Importantly, a court need not review the reasonableness of counsel's performance if the petitioner fails to show prejudice. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998) (citing *Strickland*, 466 U.S. at 697). Under this standard, the Court will address each of Petitioner's arguments.

    *i.*    *Counsel's Alleged Failure to Contest the Composition of the Jury*

With respect to the first claimed ground of ineffective assistance of counsel, the law is clear: a criminal defendant has a constitutional right to a jury that represents a fair cross-section of the community. *Compare Duren v. Missouri*, 439 U.S. 357, 360 (1979) (holding state statute that granted women an automatic exemption from jury service upon request violated defendant's Sixth and Fourteenth Amendment rights), *with Berghuis v. Smith*, 559 U.S. 314, 331 (2010) (holding defendant's fair cross-section rights were not violated even where he produced some evidence that assignment order led to the underrepresentation of African-Americans in venires).

Unlike the defendants in *Duren* and *Berghuis*, however, Petitioner has not pointed to any facts or challenged any law that resulted in the alleged "systematic exclusion" of African-

5

Americans or Asian-Americans from the jury. Pet'r's Mot. Vacate 4. Defense counsel asserts in his affidavit that "the jury in [Petitioner]'s case was selected by the standard process of jury strikes." Aschmann Aff. ¶ 2. The Court's sidebar discussion with counsel over juror strikes following the *voir-dire* likewise showed no evidence of systematic exclusions of jurors based upon race. Trial Tr. 62–70. Moreover, in its *voir-dire*, the Court included proposed questions submitted by defense counsel. *See* Dkt. No. 144. Therefore, because "[c]ounsel is not ineffective for failing to raise an objection or make a motion for which there is 'no obvious basis,'" Petitioner's counsel was not ineffective for failing to object to the composition of the jury under the facts presented here. *See Merica v. United States*, No. 7:07-cv-350, 2007 WL 4561298, at \*3 (W.D. Va. Dec. 21, 2007) (quoting *Clanton v. Bair*, 826 F.2d 1354, 1359 (4th Cir. 1987)). The Court will therefore deny Petitioner's first ground for ineffective assistance of counsel.

ii.    *Counsel's Alleged Failure to Contest the Drafting of the Indictment and Challenge Count Two as Duplicitous*

Petitioner also claims that his counsel was ineffective for failing to "notice the drafting of the indictment as to the specific statutory language of the Aiding & Abetting Statute, 18 U.S.C. 2." Dkt. No. 337. The Court, however, disposed of this issue in its order denying Defendant Phun's motion to dismiss the superseding indictment. Dkt. Nos. 64, 107. Indeed, the Court explicitly stated that "each count properly recites the elements of the offense charged therein against each Defendant." Dkt. No. 107. For purposes of this motion, however, the Court has revisited the issue and again concludes that the superseding indictment properly notified Petitioner of the charges against him. *See Blake v. Morford*, 563 F.2d 248, 251 (6th Cir. 1977) (holding that a constitutional violation occurs only when the accused is "not given proper notice in the indictment" of the charged offense).

In his supplemental pleading, Petitioner asserts that Count Two of the Superseding Indictment was duplicitous in that it "charged two distinct offenses under 18 U.S.C. § 924(c): (1) possessing a firearm in furtherance of a crime of violence, and (2) carrying a firearm during and in relation to a crime of violence." Pet'r's Supplemental Br. 7. In support thereof, Petitioner relies principally upon a decision of this Court, in which it dismissed two counts of an indictment under the same statute as duplicitous because the language of § 924(c) "delineate[s] two quite different, albeit related, proscriptions." *United States v. Pleasant*, 125 F. Supp. 2d 173, 176, 183 (E.D. Va. 2000). Based on the alleged duplicity here, Petitioner contends that "the outcome of [his] trial would have resulted in the government having to elect, or the court's dismissal of Count Two." Pet'r's Supplemental Br. 7.

"[D]uplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993) (citation and internal quotation marks omitted). "Duplicitous indictments present the risk that a jury divided on two different offenses could nonetheless convict for the improperly fused double count." *United States v. Robinson*, 627 F.3d 941, 957 (4th Cir. 2010); *accord United States v. Kamalu*, 298 F. App'x 251, 254 (4th Cir. 2008) (observing that duplicitous indictments present "the danger that a conviction will result from a less than unanimous verdict as to each separate offense" (citation and internal quotation marks omitted)). Significantly, however, in the absence of prejudice, even "a duplicitous count is not to be dismissed . . . ." *Kamalu*, 298 F. App'x at 254; *accord Robinson*, 627 F.3d at 957 (affirming conviction "assuming that § 924(c) creates separate offenses and that the indictment's conjunctive charges were plainly duplicitous" where defendant failed to show prejudice).

7

There is indeed some caselaw to support Petitioner's claim that § 924(c) "creates distinct 'use and carry' and 'possession' offenses." *United States v. Woods*, 271 F. App'x 338, 343 (4th Cir. 2008) (citations omitted); *accord United States v. Pleasant*, 125 F. Supp. 2d 173, 176, 183 (E.D. Va. 2000). *Woods*, however, was "an unpublished, non-precedential opinion" that "dealt with the mismatch between a jury instruction and an *admittedly sufficient indictment*." *United States v. King*, 628 F.3d 693, 700 n.3 (4th Cir. 2011) (emphasis added). As such, it serves only as persuasive authority and the Court is not bound by it. Moreover, the Fourth Circuit subsequently observed in a *published* opinion that "the number of offenses in § 924(c) is unsettled." *Robinson*, 627 F.3d at 957 n.4. In light of the unclear precedent on this issue, the government appropriately charged the § 924(c) count conjunctively, as is typically required when a statute is written in the disjunctive. *See United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir. 2001). Because counsel's performance did not fall below objective standards of reasonableness for failing to object that the indictment was defective, Petitioner fails to satisfy the first prong of the *Strickland* test for this aspect of his claim.

Even assuming that the statute creates two district offenses and Count Two was duplicitous as a result, Petitioner has suffered no prejudice because the special verdict form utilized in this case clearly demonstrates that the jury separately and unanimously convicted him of both the possession *and* the carrying prongs of § 924(c). Dkt. No. 162; *Robinson*, 627 F.3d at 957. Accordingly, his second ground for ineffective assistance of counsel will be denied.

*iii.    Counsel's Alleged Failure to Contest the Existence of the Alleged Conspiracy*

With respect to Petitioner's third claimed ground, the record clearly establishes that counsel for co-defendant Johnson repeatedly objected to the existence of a conspiracy, even prior to the introduction of any evidence on the issue. Trial Tr. 126, 133, 218. Defense counsel also

8

adopted a proposed jury instruction on multiple conspiracies entitled "R-Conspiracy: Single or Multiple Conspiracies." Dkt. No. 149. Because Petitioner's allegation that counsel failed to contest the existence of a conspiracy is factually incorrect, as demonstrated by the record, the Court will deny his third ground for ineffective assistance of counsel.

iv.   *Counsel's Alleged Failure to Contest the Sufficiency of the Nexus to Interstate Commerce*

With respect to the fourth claimed ground of ineffective assistance of counsel, defense counsel admits in his affidavit that he "did not challenge the evidence as insufficient to establish the requisite mens rea elements of a de minimus effect on the nexus to commerce." Aschmann Aff. ¶ 5. Counsel for co-defendant Johnson, however, did in fact challenge the sufficiency of the nexus to interstate commerce as to count one, which alleged a violation of the Hobbs Act. During trial, Johnson's counsel objected to the admission of testimony regarding whether or not cocaine travels in interstate commerce. Trial Tr. 411. In Johnson's motion for acquittal, counsel argued that the government had failed to prove a nexus to interstate commerce. *Id.* at 559. He repeated this argument in his objections to the proposed jury instructions. *Id.* at 581–82.

Even if the sufficiency of the nexus to interstate commerce had not been challenged by co-counsel, the nexus was sufficiently established by the government according to Fourth Circuit precedent. Under its "broad construction" of the Hobbs Act, the Fourth Circuit has held that a defendant's reliance on out-of-state materials satisfies the required nexus to interstate commerce. *See United States v. Santoni*, 585 F.2d 667, 670–73 (4th Cir. 1978) (holding corporation's "use of material which necessarily traveled in interstate commerce" to be sufficient nexus to provide jurisdiction for conviction under Hobbs Act). The Fourth Circuit has also held that the mere robbery of a drug dealer satisfies the nexus to interstate commerce element of the Hobbs Act. *United States v. Williams*, 342 F.3d 350, 354–55 (4th Cir. 2003).

9

Here, Petitioner's co-defendants crossed state lines from Philadelphia, Pennsylvania to Fairfax County, Virginia to commit the robbery at the center of the conspiracy. Trial Tr. 389. Under the "broad construction" of the Hobbs Act adopted by the Fourth Circuit, this movement of conspirators across state lines in furtherance of the conspiracy is sufficient to satisfy the nexus to interstate commerce. The plan to move the drugs recovered from the robbery from Virginia out of state is similarly sufficient. Trial Tr. 192. Moreover, the planned robbery of the cocaine stash house was in and of itself sufficient, pursuant to *Williams*, to satisfy the nexus to interstate commerce. 342 F.3d at 354–55. For these reasons, Petitioner's fourth claim for ineffective assistance of counsel will be denied.

    v.   *Counsel's Alleged Failure to Contest a Jury Instruction Relating to the Hobbs Act*

Petitioner next contends that his counsel was ineffective for failing to object to a "defective jury instruction that incorrectly stated the law of 1951(a)." Pet'r's Mot. Vacate 10. It is difficult to discern which of the jury instructions Petitioner alleges should have been challenged. The only instruction that seems to fit the allegation is the government's Proposed Jury Instruction No. 27 entitled "Hobbs Act Armed Robbery – Essential Elements of the Offense Charged." Dkt. No. 115. That instruction, which was accepted by the Court and read to the jury, provided as follows:

> In order to sustain its burden of proof for the crime of conspiring to obstruct, delay, or affect interstate commerce by robbery as charged in Count 1 of the indictment, the government must prove the following three (3) essential elements beyond a reasonable doubt
> One: That two or more persons agreed to commit a robbery encompassed within the Hobbs Act, 18 U.S.C. § 1951;
> Two: That the defendant knew of the conspiratorial goal; and
> Three: That the defendant voluntarily participated in helping to accomplish that goal.

10

*Id.*; Trial Tr. 724–25. Although it is true that defense counsel did not object to this instruction, there was "no obvious basis" to do so, as it accurately stated the law. *See Clanton*, 826 F.2d at 1359. Indeed, the instruction tracked the precise language cited approvingly by the Fourth Circuit: "to prove a Hobbs Act conspiracy, the government must show three things, namely that '(1) two or more persons agreed to commit a robbery encompassed within the Hobbs Act; (2) the defendant knew of the conspiratorial goal; and (3) the defendant voluntarily participated in helping to accomplish the goal.'" *United States v. Carr*, 261 F. App'x 560, 563 (4th Cir. 2008) (quoting *United States v. To*, 144 F.3d 737, 747–48 (11th Cir. 1998)). Furthermore, trial counsel for co-defendant Johnson made multiple objections concerning the requisite nexus to interstate commerce to permit a conviction under the Hobbs Act. Trial Tr. 411, 559, 581–82. In light of the above, Petitioner's counsel did not provide ineffective assistance by failing to object to the Hobbs Act instruction.

Additionally, the case cited by Petitioner actually *supports* the Court's use of the instruction that, to convict Petitioner of the firearm possession charge, the government would have to prove beyond a reasonable doubt that he "committed the crime of conspiracy to commit robbery as charged in Count 1." *Compare* Trial Tr. 730–31 (jury instruction on Count 2), *with Luchenburg v. Smith*, 79 F.3d 388, 392 (4th Cir. 1996) ("A proper instruction would inform the jury to only consider the compound handgun offense *after* it convicted on a predicate crime of violence."). Accordingly, based upon defense counsel's actual objection to a related instruction and objectively reasonable basis for not objecting to others, Petitioner has failed to show ineffective assistance of counsel and his fifth claimed ground will be denied.

11

vi.    *Counsel's Alleged Failure to Object that a Conspiracy Cannot Be Formed Between a Criminally Motivated Person and a Government Agent*

With respect to his sixth claimed ground, Petitioner accurately states the law but mischaracterizes the facts. It is indeed "well-established that one who acts as a government agent and enters into a purported conspiracy in the secret role of an informer cannot be a co-conspirator." *United States v. Chase*, 372 F.2d 453, 459 (4th Cir. 1967). Yet it is also true that "a conspiracy may continue even though certain co-conspirators terminate their connection therewith, and may be replaced by other co-conspirators . . . ." *Id.* In this case, the conspiracy was not formed between Petitioner and the UCs. Rather, the conspiracy was formed when Petitioner engaged with the other co-defendants to commit the planned robbery of the stash house. *See* Trial Tr. 228–31, 238–41. Because neither Petitioner nor the co-defendants were government agents at the time they formed the conspiracy, there was no factual basis upon which defense counsel could object that a conspiracy could not have been formed with the UCs. As a result, Petitioner fails to show that his counsel rendered deficient performance and his sixth claimed ground of ineffective assistance of counsel will be denied.

vii.   *Counsel's Alleged Failure to Argue the Existence of Multiple, as Opposed to a Single, Conspiracy*

With respect to this claimed ground of ineffective assistance of counsel, the record demonstrates that defense counsel was not objectively unreasonable for failing to allege the existence of multiple conspiracies. The Fourth Circuit has stated that a "single conspiracy exists where there is 'one overall agreement'... or 'one general business venture.'" *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988) (citations omitted). In making such a determination, factors to consider include "the overlap of key actors, methods, and goals," as well as whether

12

the operations were headquartered at the same location and whether the "methods and goals of the conspiracy remained the same throughout its activities." *Id.*

The above factors favor finding a single conspiracy in this case. The defendants shared the goal of robbing a cocaine stash house. The method of using a "crew" to rob the stash house using firearms remained the same throughout the conspiracy. The key actors also remained the same. *See* Trial Tr. 202–03, 226–36. Moreover, there was a single attempt to commit the robbery. *Cf. Leavis*, 853 F.2d at 218–19 (rejecting defendant's claim that there were multiple conspiracies despite the multiple attempts to import drugs). Under the facts of this case and Fourth Circuit precedent, defense counsel was not objectively unreasonable in failing to assert that there were multiple conspiracies.[1] Petitioner's seventh claimed ground thus fails the first prong of *Strickland* and will be denied.

viii.   *Counsel's Alleged Failure to Argue an Entrapment Defense*

With respect to Petitioner's eighth ground, defense counsel did in fact attempt to raise the entrapment defense. Dkt. No. 89 (Notice of Entrapment Defense). On March 10, 2011, the Court denied the government's motion in limine to preclude the defendants' use of the entrapment defense, but warned the defendants that if they chose to pursue it at trial, it would permit the government to introduce admissible evidence of prior criminal history to show the defendants' predisposition to commit the crime. Dkt. No. 143. Indeed, the government had already filed its notice of intent to introduce Petitioner's prior convictions on felony drug offenses. Dkt. No. 110. Under these facts, it was clearly objectively reasonable for defense

---

[1] Instead, counsel for co-defendant Johnson made multiple objections to the existence of *any* conspiracy between the defendants throughout trial. For instance, counsel attempted to convince the Court at sidebar that the "government hasn't established at this point that there is a conspiracy involving our clients" prior to the introduction of any evidence on the issue. Trial Tr. 126, 133. Petitioner's counsel later made similar objections. *Id.* at 501–07.

counsel to forego the defense in light of the risk posed by the government's proposed introduction of such unfavorable evidence.

Entrapment is an affirmative defense that is comprised of two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Matthews v United States*, 485 U.S. 58, 63 (1988). Importantly, inducement is not mere solicitation to commit a crime, but rather requires a showing of at least persuasion or mild coercion. *Sorrells v. United States*, 278 U.S. 435, 451 (1932); *United States v. Nations*, 764 F.2d 1073, 1080 (5th Cir. 1985). Predisposition entails a determination of whether the defendant "was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Matthews*, 485 U.S. at 63.

In this case, Petitioner exercised his right not to testify at trial. Trial Tr. 567. In doing so, however, he failed to provide the "'appropriate and searching inquiry into his own conduct and predisposition' as bearing on his claim of innocence" needed to raise an entrapment defense. *Sorrells*, 278 U.S. at 451. Advising a criminal defendant not to testify is, of course, a routine and legitimate trial strategy, which should not be second-guessed. *See, e.g.*, *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002) (citing *e.g.*, *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001)). In light of the almost guaranteed introduction of his criminal history if he chose to pursue the entrapment defense, "a reasonable attorney ... could have decided that the potential risks of [the defendant] testifying outweighed the potential benefits." *Sayre*, 238 F.3d at 635. Because counsel's performance clearly did not fall below objective standards of reasonableness, Petitioner fails to satisfy the first prong of the *Strickland* test.

Even assuming, *arguendo*, that Petitioner was able to satisfy the first prong of the *Strickland* test, he still fails the second prong because he has not shown a reasonable probability

14

that, but for his counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. Even if defense counsel had been able to raise the entrapment defense, it is very unlikely that a jury would have found in Petitioner's favor given the strong evidence of his predisposition to commit the crime. On or about October 28, 2010, Petitioner and his "crew" arrived in Fairfax, Virginia, armed and prepared to commit the robbery. That same day, Petitioner contacted the UCs by telephone to inform them that the robbery crew had arrived at the motel in Northern Virginia as planned. He later contacted the UCs a second time to discuss the logistics of the robbery. Petitioner's prior drug convictions also would have served as evidence of his predisposition to rob a cocaine stash house. Accordingly, because the result of the proceeding would likely have been the same even if the entrapment defense had been raised, Petitioner fails to show prejudice. Having failed both prongs of *Strickland*, Petitioner's eighth claimed ground of ineffective assistance of counsel will be denied.

    *ix.*   *Counsel's Alleged Failure to Challenge Petitioner's § 851 Enhancement*

        With respect to Petitioner's ninth ground, defense counsel did in fact object to the Court's consideration of his criminal history before trial and during sentencing. Under 21 U.S.C. § 851, if the United States attorney files a notice of intent to rely upon a defendant's previous criminal convictions during sentencing, the defendant is entitled to a written response regarding the use of this information. In this case, defense counsel did not file a written response to the government's § 851 notice. He did, however, object generally "to the allegations and facts as stated" in the Presentence Investigation Report, which included the fact of his prior drug conviction. Dkt. No. 196. Additionally, counsel filed a pre-trial objection to the government's "Notice to Introduce

Evidence of Uncharged Conduct" (Dkt. No. 110), in which he adopted the arguments made by counsel for co-defendants Johnson and McCalister.  Dkt. No. 128.

Petitioner claims that his counsel's performance was deficient because he failed to "object to the court's failure to inquire of Mr. Un with respect to whom the § 851 information was filed[,] whether or not he affirms or denies that he had been previously convicted as alleged in the information, and that he be informed that any challenge to a prior conviction which is not made before the sentence is imposed may not thereafter be raised to attack the sentence."  Pet'r's Reply Br. 23.

His argument has some merit.  *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 569 (2010) (describing § 851's notice and process procedures as "mandatory prerequisites to obtaining a punishment based on the fact of a prior conviction"); *United States v. Ellis*, 326 F.3d 593, 598–99 (4th Cir. 2003) (holding that the district court "committed plain error in failing to comply with § 851(b)" by failing to conduct the colloquy mandated by the statute).  In *Ellis*, the Fourth Circuit considered whether the district court's questions to the defendant at sentencing were sufficient to comply with the process requirements of § 851.  Section 851(b) provides that if the government files an information seeking a sentencing enhancement on the basis of prior convictions,

> the court shall after conviction but before pronouncement of sentence inquire of the [defendant] whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C. § 851(b).  The Fourth Circuit noted that the district court had "provided Ellis an opportunity to offer anything that might affect his sentence," but had not specifically ask him whether he affirmed or denied the fact of his prior convictions.  *See Ellis*, 326 F.3d at 599.

16

Relying upon the plain language of the statute, the court held that this exchange did not comply with § 851(b) and was plain error. The court went on to hold, however, that "the error did not affect Ellis' substantial rights" and thus did not provide a basis for modifying his sentence. *Id.* This latter conclusion was based on the fact that Ellis had not "contest[ed] the existence or validity of the prior convictions." *Id.*

Here, if Petitioner, through counsel, had been able to challenge successfully the fact of his prior convictions, which triggered the sentencing enhancement, he could have avoided the twenty year mandatory minimum sentence that was eventually imposed. However, even if the Court were to find that counsel's performance had fallen below an objective standard of reasonableness for failing to object to the court's failure to conduct the § 851 colloquy, no prejudice exists. Like in *Ellis*, Petitioner does not *actually* dispute the validity of the convictions presented in the government's information. *See* Pet'r's Reply Br. 23–25. Although he alleges that if he had been aware of the opportunity to deny his prior convictions, "he certainly would have done so," he notably has not alleged any facts to contend that the convictions were invalid. As a result, Petitioner fails to satisfy the second prong of the *Strickland* test, which he bears the burden to prove, as to this particular claim.

Petitioner further claims that the fact of his prior drug conviction, which triggered the § 851 enhancement, "was an element of the offense to which he had the constitutional right to have plead in the indictment and proven to a jury beyond a reasonable doubt." Pet'r's Reply Br. 19 (citing *Alleyne v. United States*, 133 S. Ct. 2151 (2013)). He avers that he brought up this issue with counsel, who said he "would look into it," but ultimately failed to object on that basis before or at sentencing. *Id.* at 22–24. The Fourth Circuit recently addressed this precise issue in *United States v. Ramos*, 571 F. App'x 177 (4th Cir. 2014). The defendant in that case claimed

that the district court had "erred in failing to submit to the jury the issue of whether he had previously been convicted of a felony drug offense sufficient to trigger the enhanced statutory mandatory minimum penalties" under § 851, relying primarily on the Supreme Court's decision in *Alleyne*. *Id.* at 178. The Fourth Circuit held that the defendant's argument was foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which remained good law even after *Alleyne*. *Id.* (citing *United States v. McDowell*, 745 F.3d 115, 123–24 (4th Cir. 2014) (explaining that the holding in *Almendarez-Torres*, which "permits a judge to find the fact of a prior conviction by a mere preponderance of the evidence, even if this fact raises the statutory maximum or minimum penalty for the current offense[,] … remains good law")).

Nevertheless, even if Petitioner's claim were not foreclosed, several courts have held that *Alleyne* does not apply retroactively on collateral attack. *E.g.*, *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013). Significantly, "a new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001) (internal quotation marks omitted). Accordingly, Petitioner's ninth claimed ground for ineffective assistance of counsel fails as well.

    *x.*    *Counsel's Alleged Failure to Seek Dismissal of the Indictment Under the "Outrageous Government Conduct" Doctrine*

With respect to Petitioner's tenth claimed ground for ineffective assistance of counsel, defense counsel was not objectively unreasonable for failing to raise the outrageous government conduct doctrine under the facts of this case. To justify relief under the doctrine, the Fourth Circuit requires conduct "so outrageous as to shock the conscience of the court," which will only occur in "rare cases." *United States v. Dyess*, 478 F.3d 224, 234 (4th Cir. 2007) (citations omitted). This reasoning is in line with Supreme Court precedent, which has "greatly limited"

18

the application of the doctrine, particularly in drug conspiracy cases where government agents are involved. *See United States v. Hasan*, 718 F.3d 338, 342–43 (4th Cir. 2013) (citing *Hampton v. United States*, 425 U.S. 484 (1976)). For example, in *Hampton*, the Supreme Court held that the defendant's due process rights had not been violated under the outrageous government conduct doctrine where a government informant sold heroin to the defendant, who then sold it to government agents. 425 U.S. at 489–90. Notably, the Fourth Circuit has *never* held that a defendant's due process rights were violated by the government's outrageous conduct.

In support of his claim, Petitioner cites *United States v. Hudson*, 3 F. Supp. 3d 772 (C.D. Cal. 2014), in which the district court dismissed the indictment under the doctrine. In that case, the ATF conducted a reverse sting operation involving "fake drug stash-house robberies." *Id.* at 775. The court held that these types of operations "offend the United States Constitution when used solely to obtain convictions." *Id.* Alleging that the facts of *Hudson* and his case are "identical," Petitioner contends that his counsel was ineffective for failing to raise the doctrine. Dkt. No. 357.

Although the two cases are indeed very similar, *Hudson* has subsequently been reversed by the Ninth Circuit, which ultimately determined that the ATF's conduct "did not violate fundamental fairness or shock the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment." *United States v. Dunlap,* 593 F. App'x 619, 621 (9th Cir. 2014) (quoting *United States v. Williams*, 547 F.3d 1187, 1200 (9th Cir. 2008)). Indeed, several courts have determined that the ATF's reverse sting operations involving non-existent drug stash houses, such as occurred here, do not warrant application of the outrageous government conduct doctrine. *E.g.*, *United States v. Knapp*, 74 F. Supp. 3d 1338 (D. Nev. 2015); *United States v. Colon*, 71 F. Supp. 3d 269, 275 (D. Conn. 2014); *United States v. Duckett*, No. CRIM. PWG-13-

19

626, 2015 WL 424806, at *6 (D. Md. Jan. 29, 2015).  Given the ruling in *Dunlap* and the highly

circumscribed application of the doctrine under Supreme Court and Fourth Circuit precedent,

defense counsel cannot be said to have been objectively unreasonable in failing to raise it.  For

the same reason, the outcome would not have been different even if counsel had raised it, and

therefore Petitioner fails to show any prejudice.  Accordingly, Petitioner's tenth ground for

ineffective assistance of counsel must also be denied.

xi.   *Failure to Object to the Jury Instructions Related to Aiding and Abetting*

In a recently filed pleading, Petitioner claims that his counsel was constitutionally

ineffective for failing to object to the jury instructions on aiding and abetting, which allegedly

led to the "constructive amendment of the indictment."  Pet'r's Supplemental Br. 4.  He asserts

that a constructive amendment occurred because the indictment did not recite any of the elements

of aiding and abetting, but rather cited only the statute itself, 18 U.S.C. § 2.

Petitioner's first argument has clearly been foreclosed by the Fourth Circuit, which has

held "that an indictment need not set forth vicarious coconspirator liability."  *United States v.

Ashley*, 606 F.3d 135, 143 (4th Cir. 2010).  As a result, it is "not error for the district court to

instruct the jury on this theory."  *Id.*  The court elaborated as follows:

> It is settled that vicarious liability predicated on having aided or
> abetted the crimes of another need not be charged in an indictment.
> The reason for this rule is that aiding and abetting simply describes
> the way in which a defendant's conduct resulted in the violation of
> a particular law.  The federal criminal statute dealing with the
> subject speaks simply of agency and causation principles,
> providing that a person is punishable "as a principal" if he "aids,
> abets, counsels, commands, induces or procures" the commission
> of a federal offense or "willfully causes" another to do an act that
> would be criminal if he performed it himself.  18 U.S.C. § 2.
> Because the aiding and abetting provision does not set forth an
> essential element of the offense with which the defendant is
> charged or itself create a separate offense, *aiding and abetting
> liability need not be charged in an indictment.*

20

*Id.* (emphasis added) (citations omitted). Other courts of appeals have similarly held that a jury instruction on aiding and abetting liability does not constructively amend an indictment because "[a]iding and abetting is implied in every federal indictment for a substantive offense." *E.g.*, *United States v. Armstrong*, 909 F.2d 1238, 1241 (9th Cir. 1990) (citation omitted). As a result, defense counsel was not objectively unreasonable for failing to object to the omission of aiding and abetting language in the indictment. Petitioner's eleventh and final ground for ineffective assistance of counsel will therefore be denied.

    *xii.*    *Strickland Claim as to Appellate Counsel*

        For the same reasons provided above, appellate counsel was not ineffective for failing to raise on appeal the eleven issues identified by Petitioner.

**III.    Conclusion**

        For the foregoing reasons, Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (Dkt. No. 337) will be denied.

        An appropriate Order shall issue.

August 19, 2015

Alexandria, Virginia

                          /s/

                        Liam O'Grady
                        United States District Judge